(119 App. Div. 1)

## STEIN v. DUNNE.

(Supreme Court, Appellate Division, First Department. April 19, 1907.)

1. BREACH OF MARRIAGE PROMISE—PLEADING—NEGATIVING EXCEPTIONS TO LAW DECLARING MARRIAGE VOID.

Domestic Relations Law, Laws 1896, p. 216, c. 272, § 3, declares a marriage void if contracted by a person whose husband or wife by a former marriage is living, unless either the former marriage was annulled or dissolved for a cause other than the adultery of such person, or the former spouse has been sentenced to imprisonment for life, or has absented himself or herself for five successive years without being known to be alive. In a suit for breach of marriage promise the validity of plaintiff's marriage to a third person, on account of his having a living spouse by a former marriage at the time, become material. *Held*, that it was not necessary for her to specifically negative the exceptions to the law in a reply setting up the prior existing marriage of her alleged husband.

**2. SAME—RIGHT TO AMEND.**

　　Where a demurrer to a reply in an action for breach of marriage promise was sustained because it did not negative the exceptions under Domestic Relations Law, Laws 1896, p. 216, c. 272, § 3, providing that a marriage is void if contracted by a person whose husband or wife by a former marriage is living, unless certain conditions exist, a judgment should not be entered on the merits, but the plaintiff should be allowed to amend.

　　Lambert and Laughlin, JJ., dissenting.

　　Appeal from Special Term, New York County.

　　Action by Edith C. Stein against James Dunne. From a judgment for defendant, plaintiff appeals. Affirmed.

　　Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

　　Charles Goldzier, for appellant.

　　Morgan J. O'Brien, for respondent.

　　SCOTT, J. The plaintiff sues for breach of a promise to marry. Defendant denies that he ever promised to marry plaintiff; and, by way of separate defenses, alleges that prior to the alleged agreement the plaintiff had been lawfully married to one Julius Stein, and had lived and cohabited with him as his wife, and that such marriage had never been annulled, nor had the parties ever been divorced from the bonds thereof, and that in consequence the plaintiff was not competent to contract a marriage or to make a valid engagement to marry; that plaintiff had brought two actions against said Stein, one for a separation and one for an annulment of the marriage, on the ground that at the time of his marriage with plaintiff, Stein had another wife living, and that plaintiff, by holding herself out as the wife of said Stein, had estopped herself from claiming to be a single woman capable of entering into a valid engagement to marry. The plaintiff, although not required to do so, voluntarily replied to these defenses, alleging that prior to January 10, 1900, the date upon which she went through a marriage ceremony with Julius Stein, he had been duly married to another woman, who on said 10th day of January, 1900, was living; that no divorce or annulment of said marriage had been obtained; that the same was on said 10th day of January, 1900, in full force and effect, and that by reason thereof the plaintiff never became nor is the lawful wife of said Stein; and that her marriage to said Stein was and is absolutely void and of no effect whatever. To this reply the defendant demurred upon the ground of its insufficiency. His demurrer was sustained, and a final judgment entered dismissing the complaint upon the merits. It is sought to sustain this judgment upon two grounds: First, that the attempted marriage to Stein, although void, incapacitated plaintiff from making a valid agreement to enter upon another marriage until the invalidity of the first marriage should be judicially determined; and, second, because the continued existence of Stein's former marriage was insufficiently pleaded in the reply.

　　If we assume that the continuing validity of Stein's first marriage is sufficiently pleaded in the reply, that pleading would seem to be

proof against demurrer. The domestic relations law makes a clear
and sharp distinction between marriages which are absolutely void
and those which are merely voidable; and this distinction has been
recognized in our jurisprudence from the earliest days. A marriage
is absolutely void if at the time of its celebration the former husband
or wife of one of the parties was living, and that marriage was then
in force. Domestic Relations Law, Laws 1896, p. 216, c. 272, § 3;
Code Civ. Proc. § 1743. Such a marriage imposes upon the party
imposed upon no legal restraint against contracting another (Patter-
son v. Gaines, 6 How. [U. S.] 550, 12 L. Ed. 553), and no judicial
sentence of nullity is necessary to free the party imposed upon (Pettit
v. Pettit, 105 App. Div. 312, 93 N. Y. Supp. 1001). There is un-
doubtedly a fitness and propriety in procuring a judicial decree de-
termining the nullity of such a marriage, and the Code permits an
action to be maintained for that purpose, but a decree in such an ac-
tion does not, however, avoid the marriage, but merely declares its
invalidity. If plaintiff's former marriage to Stein was void, as she
attempts to allege, then she and defendant could have contracted a
valid marriage on the date on which, as she says, defendant promised
to marry her, and, if this be so, she certainly could have lawfully
agreed to do that which she could lawfully perform.

The objection to the form of the reply is extremely technical. The
domestic relations law (section 3) declares that:

"A marriage is absolutely void if contracted by a person whose husband or
wife by a former marriage is living, unless either: (1) such former mar-
riage has been dissolved for a cause other than the adultery of such person;
(2) such former husband or wife has been finally sentenced to imprisonment
for life; (3) such former husband or wife has absented himself or herself for
five successive years then last past without being known to such person to be
living during that time."

The allegation of the reply respecting Julius Stein's former marriage
is that:

"No divorce or annulment of said marriage had been obtained; that the
same was on said 10th day of January, 1900, in full force and effect."

The criticism upon the reply is that the allegation that the former
marriage was "in full force and effect" is a mere conclusion of law;
that the word "unless," in the section quoted from the domestic re-
lations law, is to be construed as an exception, and that, since excep-
tions must be pleaded, the reply should have alleged specifically that
Julius Stein's former marriage had not been dissolved for a cause oth-
er than his adultery, that his former wife had not been finally sen-
tenced to imprisonment for life, and that she had not absented herself
for five successive years then last past without being known to said
Stein to be living during that time. If it is necessary to plead these
exceptions in this manner in a reply asserting the invalidity of plain-
tiff's marriage to Stein, it would be equally necessary to so plead them
in an action to declare that marriage void; and it is quite certain that
the profession has not so understood heretofore, and no court has ever
so held. In my view the so-called exceptions partake much more of
the character of provisos; but, whether considered as exceptions or
provisos, it was not necessary to negative them in the pleading. This

precise question came before the Court of Appeals with reference to an indictment for bigamy. Fleming v. People, 27 N. Y. 329. The statute under which the defendant was indicted declared that every person having a wife living, who shall marry any other person, "except in the cases specified in the next section, shall be adjudged guilty of bigamy," etc. 2 Rev. St., p. 687, pt. 4, c. 1, tit. 5, § 8. The next section declared that the preceding one "shall not extend to" certain persons and cases arranged in six classes, embracing those contained in the domestic relations law respecting void marriages. The indictment failed to negative the exceptions, and its sufficiency was for that reason called in question. The Chief Judge (Denio) was of the opinion that the cases stated in which a second marriage would be bigamous constituted exceptions which should technically have been negatived in the indictment; but that the defect was purely formal and immaterial, because the people would be under no necessity to offer proof to negative the exceptions, which were matter of defense. Judge Emott, however, with whom the other judges agreed, was of opinion that the cases specified in the statute were rather in the nature of provisos than of exceptions, and that it was necessary neither to negative them in the indictment nor to offer proof thereon upon the trial.

In my opinion, therefore, the reply was sufficient and the demurrer should have been overruled; and, even if it had been sustained, the judgment appealed from is wrong, for the plaintiff should at least have been afforded an opportunity to amend her reply so as to sufficiently allege the invalidity of her marriage to Stein.

The judgment should be reversed and the demurrer overruled, with costs in this court and the court below.

PATTERSON, P. J., and HOUGHTON, J., concur.

LAMBERT, J. (dissenting). The plaintiff brings this action to recover damages for breach of promise of marriage. She alleges in her complaint that:

"Heretofore, and between March, 1902, and October, 1904, at the city of New York, in consideration that the plaintiff, who then was and still is sole and unmarried, would marry the defendant, the said defendant promised and agreed to marry the plaintiff at a time thereafter to be mutually agreed upon, and within a reasonable time."

The breach of this contract is set forth, and the plaintiff demands judgment in the sum of $50,000. The answer of the defendant denies the material allegations of the complaint, and sets up three separate and distinct defenses, based upon a prior marriage of the plaintiff with one Julius Stein, and that the plaintiff now has actions pending in the courts of this state for separation and for the nullification of such marriage. The plaintiff replied to these defenses, setting up that the said Julius Stein, her alleged husband, had been duly married to another woman, who was living at the time of her alleged marriage to the said Stein, and that no divorce or annullment of said marriage had been obtained; that the same was in full force and effect; that by reason thereof this plaintiff never became, was, or is the lawful wife

of the said Julius Stein. The remaining portions of the reply set out the same facts to meet the other separate defenses.

The defendant demurred to these replies upon the grounds that they were insufficient in law upon the face thereof. This demurrer has been sustained, and the plaintiff appeals to this court. The allegation of the complaint that the plaintiff is sole and unmarried is denied by the defendant; but the allegation of her reply, that at the time of her alleged marriage to Stein the latter was married to another woman, who was then living, and that no divorce or annulment of said marriage had been obtained at the time of the ceremony between the plaintiff and said Stein, stands admitted by the demurrer. Section 3 of the domestic relations law (chapter 48 of General Laws) provides that:

"A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either (1) such former marriage has been dissolved for a cause other than the adultery of such person; (2) such former husband or wife has been finally sentenced to imprisonment for life; (3) such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

Assuming, without deciding, that the reply is a relevant pleading in this action, its effect, if supported by evidence, would simply tend to establish the allegation of the complaint that the plaintiff is "sole and unmarried." The important question to be determined upon demurrer is whether the allegations of the reply are sufficient in law to show that the plaintiff was "sole and unmarried" at the time of the alleged offer of marriage on the part of the defendant. The demurrer admits all of the facts stated, but not the conclusions of law. At the time of the ceremonial marriage of the plaintiff with Julius Stein, the latter had been "duly married to another woman, who was living at the time of her alleged marriage to the said Stein, and that no divorce or annulment of said marriage had been obtained." The allegation that this alleged prior marriage was "in full force and effect" is but a conclusion to be drawn from the facts. The statute provides, in effect, that the prior marriage is not in "full force and effect" if it transpires that the former marriage has been annulled or dissolved for a cause other than adultery—if it is shown that the former husband or wife has been absent for five consecutive years then last past, without being known to the other party to have been living during that time. Section 3, Domestic Relations Law. The reply here under consideration does not allege that the former wife has not been finally sentenced to imprisonment for life, nor yet that she has not absented herself for a period of five years prior to the second marriage, without Stein knowing that she was alive during that time; and, without these facts being admitted, how are we to know that the ceremonial marriage with Stein was absolutely void? The rule is well settled that an exception in a statute must be negatived in pleading, while a proviso need not be. An exception exempts something absolutely from the operation of the statute by express words in the enacting clause. A proviso defeats its operation conditionally. An exception takes out of the statute something that otherwise would be part of the subject-matter of it. A proviso avoids them by way of defeasance or excuse. Row-

ell v. Janvrin, 151 N. Y. 60, 67, 45 N. E. 398, and authorities cited; Harris v. White, 81 N. Y. 532, 545. As already suggested, the domestic relations law provides that "a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either such marriage has been annulled," or some of the other conditions are shown to exist. Clearly the word "unless," as used in this statute, is to have the construction of an exception. Marriages where either of the parties have a husband or wife living are absolutely void, except in certain specified cases, and, if we are to know whether a marriage is void or not, we must know all of the facts. The mere allegation that a man has been duly married, and that his wife is living at a given time, and that there has been no divorce, is not sufficient to show that a subsequent marriage is void. It must be shown that none of the other facts exist which the statute points out as exceptions to the general rule. "The word 'unless' has the force of 'except,'" say the court in Manning, Bowman & Co. v. Keenan, 73 N. Y. 45, 56. Its primary meaning is "unloosened from," so that what follows in the sentence after the word "unless" is excepted or "unloosened" from what went before it; and, if this is the effect of the word as used in the statute here under consideration, as we believe it to be, the reply of the plaintiff, which fails to negative these exceptions, does not in law establish the facts necessary to show that the plaintiff in this action is an unmarried woman, or that she was such at the time of entering into this alleged contract of marriage. The law is well settled that a void marriage imposes no legal restraint upon the party imposed upon from contracting another. Patterson v. Gaines, 6 How. (U. S.) 550, 592, 12 L. Ed. 553. Being void, not merely voidable, no judicial sentence of nullity is necessary to free the party imposed upon. Pettit v. Pettit, 105 App. Div. 312, 93 N. Y. Supp. 1001; Dare v. Dare, 52 N. J. Eq. 195, 27 Atl. 654; Williams v. Williams, 63 Wis. 58, 23 N. W. 110, 53 Am. Rep. 253; Blossom v. Barrett, 37 N. Y. 443, 97 Am. Dec. 747; Bishop on Marriage & Divorce, 719. But the difficulty with the plaintiff is that she has failed to show facts sufficient to establish that her marriage with Stein is void.

The judgment should be affirmed, with costs.

LAUGHLIN, J. (dissenting). I am of opinion that the interlocutory judgment sustaining the demurrer to the reply should be affirmed. Assuming that the plaintiff was competent to contract a second marriage without first having her former marriage to Stein annulled, I think it was incumbent upon her to allege all facts essential to show that her former marriage was void. The Legislature of the state has undertaken to prescribe by statute what constitutes a void and what constitutes a voidable marriage, and therefore the statutory law on this subject supersedes the common law. It has not been declared by statute that every marriage by a party who has a former husband or wife living shall be void. The Legislature has merely declared that such a marriage shall be void unless one of three facts existed. If the former marriage was annulled or the parties were legally divorced, or the former wife of Stein was duly sentenced to imprison-

ment for life, or absented herself for a period of five years then last past, without being known to be living during that time, then the former marriage was not void. Section 3, Domestic Relations Law. In my opinion, the reply, in order to meet the defense of the plaintiff's former marriage set up in the answer, should have negatived the existence of all of these facts, in order to show that the former marriage was void, because the burden of proving its invalidity rests on her. Gaines v. Hennen, 65 U. S. 553, 576, 16 L. Ed. 770; 1 Bishop on Marriage & Divorce (6th Ed.) § 299. It is alleged in the reply that Stein's former marriage had not been dissolved, and that it was in full force and effect. Whether it was in full force and effect or not, depended, not only upon the fact that it had not been dissolved, but also upon the fact that his former wife had not been duly sentenced to imprisonment for life, and had not absented herself for a period of five years then last past, without being known to him to be living during that time. The averment that his former marriage was in full force and effect is a legal conclusion. It may be the opinion of the plaintiff and it may be the opinion of her attorney; but the pleadings must allege facts, and not opinions, because the opinions may be unsound; and, if the facts are alleged, the court may decide on demurrer whether the opinion is or is not warranted.

Moreover, I am of opinion that, even though the reply negatived the facts which would have taken the former marriage of Stein from the category of void marriages, still, the plaintiff's ceremonial marriage to Stein never having been annulled by a court of competent jurisdiction, her contract for marriage with the defendant was void upon grounds of public policy. No case in point upon the facts has been cited or found. The cases in which it has been adjudged that a second marriage was valid without a decree adjudging the first marriage void have arisen between the parties to a second consummated marriage or concerning the issue of such marriage, where the court was compelled to decide the status of the parties or of their issue, after a second ceremonial marriage, followed by cohabitation. In all of the text-books and decisions, the impropriety of the second marriage without the annullment of the first is recognized. In the case at bar not only would society be offended by requiring the defendant to perform his contract to marry the plaintiff, or, what is tantamount thereto, because it involves the approval of the contract, to pay damages for his failure to do so, but such a decree of the court would result in a serious public scandal that would likely reflect not only on the defendant, but on any issue of the marriage. In her reply plaintiff informs us in effect that her relations with Stein were meretricious because the marriage ceremony between them was a nullity, owing to the fact that he had a wife living. If that be so, assuming the allegations to be sufficient to show the invalidity of her marriage to Stein probably if she and the plaintiff voluntarily performed their marriage contract, the marriage would be valid, but it would always be subject to attack, and the defendant and his issue might be called upon to produce proof of the invalidity of the former marriage at some future period so remote that it might be difficult or impossible to

procure the evidence. It is manifest that the invalidity of the former marriage rests in doubt upon the facts, for plaintiff has brought two actions against her former husband, in one of which she seeks an annulment of the marriage and in the other she affirms the marriage and seeks a separation and alimony. It is all very well to say that defendant knew the facts and is her attorney in those actions which are still pending. The argument loses sight of the interest of the public in marriage contracts, which is the principal ground upon which this dissenting opinion is based. See Grover v. Zook (Wash.) 87 Pac. 638. Unless the court is prepared to say that it is the duty of every minister and officer authorized to perform the marriage ceremony to marry parties where one of them has been formerly married, and the former husband or wife is living, and the former marriage has not been annulled, and the parties have not been divorced, and the former husband or wife has not been duly sentenced to imprisonment for life, and has not absented himself or herself for a period of five years then last past, without being known to be living during that time—a contract for a second marriage cannot be sustained. It seems to me that it is clearly against public policy to either require or permit the solemnization of a second marriage where the former husband or wife of one of the parties is living until the former marriage has been duly dissolved or annulled by a court of competent jurisdiction. The parties may assert, as the defendant, by a demurrer, here concedes, that at the time of the former marriage one of the parties had a husband or wife living; but that alone does not render the second marriage void, and, as already observed, whether or not it was void depends upon the three other facts specified in the statute. The parties may assert that none of the facts which would save the marriage from the invalidity declared by the statute existed; but in this they may be mistaken, and under the forms of law a new marriage might thus be solemnized and consummated which later on, upon a judicial determination of the facts, might be decreed to be absolutely void. Innocent children might thus be brought into the world to be branded through life as illegitimate. Since the statute authorized an action by the plaintiff to annul her former marriage, and thus conclusively establish for the benefit of any future husband or the issue of any future marriage her right to remarry, and since there is grave danger to society and to the issue born of a subsequent marriage without such a decree, I am of opinion that the contract upon which this action is based should be declared void as against public policy.

I therefore vote to affirm the interlocutory judgment.