(93 Misc. Rep. 258)

### BUTLER v. BUTLER et al.

(Supreme Court, Trial Term, Schenectady County.   January, 1916.)

1. MARRIAGE ☞11—INVALIDITY—STATUTE.

Under Domestic Relations Law (Consol. Laws, c. 14) art. 2, § 6, providing that a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless such former marriage has been annulled, the husband or wife sentenced to imprisonment for life, or has absented himself or herself for five successive years last past without being known to the person to be living during such time, where a wife, who knew that her husband was alive and had lived with her within five years, married again, her second marriage was absolutely void.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 30; Dec. Dig. ☞11.]

2. HUSBAND AND WIFE ☞14—TENANCY BY THE ENTIRETY.

Only husband and wife can take and hold realty as tenants by the entirety.·

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 71–86, 88, 89; Dec. Dig.·☞14.]

3. HUSBAND AND WIFE ☞14—TENANCY IN COMMON—CREATION BY CONVEYANCE TO PURPORTED HUSBAND AND WIFE.

Where a husband conveyed realty to third persons, who conveyed back to himself and wife, as husband and wife, but the marriage was in fact void, a tenancy in common, but not a tenancy by entirety, resulted.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 71–86, 88, 89; Dec. Dig. ☞14.]

4. DEEDS ☞70—REFORMATION OF INSTRUMENTS ☞7—RIGHT TO CANCELLATION.

Where a woman, marrying, misrepresented that she did not know that her former husband had been living within five years, a circumstance invalidating the marriage, and loaned money to her husband to start building a house, who thereafter, through third persons, conveyed the property and other lots to himself and to her, as husband and wife, to secure her advance, which he would not have done, had he not thought himself married, the deeds conveying the house and lot will be set aside, and those conveying the lots be reformed, at the husband's suit to divest the wife's interest.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 165–182; Dec. Dig. ☞70; Reformation of Instruments, Cent. Dig. § 20; Dec. Dig. ☞7.]

5. REFORMATION OF INSTRUMENTS ☞33—NECESSARY PARTY.

In a husband's suit against his purported wife to reform, for her fraud upon him, deeds executed by a third person to the husband and wife to effectuate a conveyance from the husband alone back to them both, the third person, who had no interest in the property, and was not charged with fraud, was not a necessary party.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 122–139; Dec. Dig. ☞33.]

6. VENDOR AND PURCHASER ☞229—GOOD FAITH.

Where a woman committed a fraud upon her second husband by marrying him while she knew that her first husband had been living within five years, and such second husband conveyed property to her as security for a loan, which he would not have done but for the marriage, whereupon, learning of the prior marriage, he commenced an action for annulment of his marriage against the wife, his attorney showing the first husband's affidavit of the fact of marriage to the wife's counsel, both of them

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

discussing the case, while the wife gave her attorney, who had acted for her in regard to the loan, a quitclaim deed of her interest in the property conveyed her for his services in the annulment suit, the situation put such attorney upon inquiry as to the husband's rights.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 477–494; Dec. Dig.⊛ 229.]

7. CANCELLATION OF INSTRUMENTS ⊛59—RIGHT TO LIEN.

In suit by a husband to cancel and reform his conveyances through third persons back to himself and wife, who had practiced fraud upon him in marrying him while her first husband was living, such wife, who loaned the husband at least $237 of her money, without being repaid, was entitled to a lien on the property, conveyed as security, for such amount.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 119–125; Dec. Dig. ⊛59.]

Suit by Harley M. Butler against Estella M. Butler and others. Findings directed in accordance with the opinion for plaintiff, with a lien in favor of the named defendant.

Stuart G. Knight, of Schenectady, for plaintiff.

Walter F. Wellman, of Schenectady, for defendants.

WHITMYER, J. [1] Plaintiff is seeking to set aside two deeds of a house and lot, one for himself to defendant Ernest C. Verwiebe, dated June 6, 1914, and the other from said Verwiebe to plaintiff and to defendant Estella M. Butler, as husband and wife, dated June 8, 1914, and is seeking also to reform two other deeds of two lots conveyed by Levi S. Benedict to plaintiff and to Estella, as husband and wife, one dated June 6, 1914, and the other July 10, 1914, by striking out the words "and Estella M. Butler, as husband and wife," and making other corresponding changes, on the ground that the marriage between himself and Estella and that the said deeds were induced and procured by her fraud and deceit. Plaintiff has lived in or near the city of Schenectady nearly all of his life. He met Estella in December, 1913, while visiting his brother, in a suburb of the city of Boston. She and his brother were boarding at the same boarding house. She was known as Mrs. Estella Hammond. She told plaintiff that she had been married, but that her husband had been absent continuously for five years, that she did not know where he was and whether or not he was alive, and that she had tried to locate him, but had been unable so to do. Plaintiff proposed marriage. They came to the city of Schenectady and consulted an attorney, defendant Miller. Plaintiff asked him how long a former husband would have to be missing before the wife could marry. The evidence does not show just what Miller said, but plaintiff applied for a marriage license. At the city clerk's office he was told that an affidavit to the effect that the wife had not seen or heard from her husband for five years was necessary. The affidavit was prepared by Miller. It was to the effect that Estella had married Josiah Hammond on September 23, 1905, and had lived with him until November 13, 1907, when he abandoned her, and that he had been absent for five successive years, without being known to

her to be alive. She swore to it before Miller on February 5, 1914. A license was then procured and a marriage ceremony was performed on February 14, 1914.

Hammond, the husband, testified at the trial. Plaintiff located him in Lynn, Mass., with the aid of one of Estella's uncles. He testified that he lived with her until August 27, 1912, and that he did not see her after that until the trial. She testified that he left her in November, 1909, and that she did not know until the trial whether he was alive or not. However, the circumstances show that Hammond told the truth and that she did know. The marriage to plaintiff was, therefore, absolutely void. Domestic Relations Law, art. 2, § 6; Stein v. Dunne, 119 App. Div. 1, 103 N. Y. Supp. 894, affirmed 190 N. Y. 524, 83 N. E. 1132. And plaintiff was an innocent party. Estella made false statements to him for the purpose of inducing him to marry her, and he married her relying upon them and believing them to be true. The marriage was brought about by her fraud and deceit. Estella was injured in April, 1914, while on a car of the Schenectady Railway Company, and the company paid her $550 in settlement. She and plaintiff signed the release. Shortly thereafter she loaned plaintiff some of the money. She claims that he asked for it, so that he might start a building on one of his lots and get it along far enough to procure a mortgage loan, and that she loaned him $350. He claims that he did not tell her why he wanted the money and that she loaned him $237. On May 29, 1914, Miller wrote and asked him to adjust the loan on or before June 2, 1914, stating that Estella had stated that he would not give her any security. He called a day or two later. Miller testified that plaintiff admitted that he owed Estella about $300, and said that he could not give her a mortgage, because he was trying to place one, but that he would give her a one-half interest in the property. And he claims that he then suggested a tenancy by the entirety, but that plaintiff did not permit him to draw the deeds, because he thought that his charge was excessive. Plaintiff testified that Miller "spoke about making over the property," but he did not give the conversation. He conveyed the house and lot to Verwiebe on June 6, 1914, and Verwiebe conveyed to him and to Estella, as husband and wife, on June 8, 1914; and Benedict conveyed the lots to them in the same way, one on June 6, 1914, and the other on July 10, 1914.

[2-4] The deeds indicate that it was the intention to create a tenancy by the entirety, but the parties could not take and hold in that tenancy, because they were not husband and wife. If there had been no fraud and deceit, a tenancy in common would have been the result. Stelz v. Shreck, 128 N. Y. 263, 28 N. E. 510, 13 L. R. A. 325, 26 Am. St. Rep. 475; Perrin v. Harrington, 146 App. Div. 292, 130 N. Y. Supp. 944. And, so far as the matter of security is concerned, although talked about, it seems clear that plaintiff would not have given deeds, if he had not supposed that he was Estella's husband. The deeds of the house and lot should therefore be set aside, and the deeds of the lots should be reformed, as requested.

[5] It is claimed that the Benedict deeds cannot be reformed, be-

cause Benedict has not been made a party to the action. But he has no interest in the property, he is not charged with fraud, and there was no fraud as against him. The fraud was by Estella upon plaintiff. But for that, her name would not have appeared in the deeds. This being so, they may be reformed without making Benedict a party. Gebel v. Weiss, 42 N. J. Eq. 521, 8 Atl. 889. The case cited is precisely in point. The deed there was to "Peter Weiss and Kunigunda, his wife." The consideration was $2,040. Of this the wife paid $440 in cash from her own money and both signed a mortgage for the balance. She had three children by Weiss. After his death, learning that he had a wife living, she brought action against the wife and her children, to establish her title to the whole property. The grantor named in the deed was not made a party. And it was held that she was entitled to the decree asked for, because she had paid all of the consideration, and because of the fraud of Weiss in marrying her and in inducing her to believe that he was her lawful husband, but for which belief his name would not have been inserted in the deed.

[6] The parties lived together, after the deeds were given, until some time in September, when plaintiff received information that Hammond was alive. They had a quarrel, and plaintiff struck Estella. He was arrested, convicted, and sentenced to the county jail for 60 days, but was released by Estella's efforts, after serving 20 days. After his release, he started out to find Hammond. He located him in the city of Lynn, Mass., with the aid of Estella's relatives, and procured an affidavit from him. This was verified November 10, 1914, and was to the effect that he had lived with Estella until August 27, 1912, and that their marriage was in force. Plaintiff returned to Schenectady and commenced an action for annulment on November 11, 1914. McNab was his attorney. He showed Hammond's affidavit to Miller, who had been acting for Estella. The attorneys discussed the case. Estella did not appear, but gave Miller a quitclaim deed, on November 16, 1914, of her interest in the house and lot and in one of the lots for his services. It seems clear, therefore, that Miller had knowledge or notice of the situation. At any rate, the situation was such as to put him upon inquiry. Anderson v. Blood, 152 N. Y. 285, 46 N. E. 493, 57 Am. St. Rep. 515.

[7] Estella claims that she loaned plaintiff $350. He says, $237, although he admitted to Miller that the amount was about $300. He testified that he used $30 of it to pay a dressmaking bill contracted by her before marriage, $53 to pay for money borrowed by her before marriage, and $24 for filling her teeth. And he testified, further, that he turned over the furniture and household utensils for what he owed, when they separated. She denied these statements, and a letter written by him in September, 1914, while he was in jail, indicates that the bill for filling teeth had not been paid at that time. The evidence is insufficient to show that he made the payments claimed. Moreover, the furniture had been bought on the installment plan, and was taken by the dealer, because of his default in payment, and the household utensils, apparently, were turned over to his mother for their board; and one of his letters, written while he was in jail and after

he knew that Hammond was alive, indicates that he, at that time, wanted Estella to have at least $200, and more, if possible. The money received from the railroad company was her money. She loaned some of it to plaintiff. The exact amount is somewhat uncertain, but it was at least the sum of $237, and she ought to have a lien for that amount.

Findings accordingly, with a direction for costs as against Estella, to be taxed as in an action at law.