Bernard S. Meyer, J.
In this action plaintiff husband asks reformation of a deed to himself and defendant as husband and wife so as to delete the name of defendant from the deed. The parties were married on April 13, 1968. On July 8, 1968, plaintiff entered into a contract to purchase a house in Great Neck in his own name, but thereafter assigned the contract to himself and defendant, and at the closing on August 5, 1968 title to the house in question was taken in the names of both, as husband and wife.
On January 12,1971 the marriage of the parties was annulled, in an uncontested action, because of the fraud of defendant in concealing her prior marriage. Defendant urges that since plaintiff could have sought a determination of title in the annulment action (Domestic Relations Law, § 234), the judgment in that action is a bar to this action. Plaintiff argues that section 234 of the Domestic Relations Law is permissive, but says that the annulment decree is a binding determination of the fraud issue. Defendant was permitted to introduce, subject to a motion to strike, evidence to show that prior to their marriage plaintiff was made aware of her prior marriage. The motion to strike is now granted, and plaintiff is granted judgment reforming the deed to delete from the description of the grantee the words “ and Helene Trecot, his wife ”, but defendant is declared to have an equitable lien upon the premises to the extent of $4,300.
Defendant’s argument that the action is barred by the prior annulment action rests on the rule against splitting causes of action. The prior judgment has not been pleaded by defendant as CPLR 3018 (subd. [b]) requires, but if the pleading defect be overlooked, the prior judgment should not be held to have merged the reformation cause of action now asserted.
True, section 234 of the Domestic Relations Law authorized the annulment court to “ determine any question as to the title to property arising between the parties,” but the legislative history of that provision shows that it was designed to overturn ‘ ‘ present law, requiring that such relief be obtained in a separate action or proceeding,” (1963 Report of the Joint Legis. Committee on Matrimonial and Family Laws; N. Y. Legis. Doc., 1963, No. 34, p. 84). Thus the legislative purpose was permissive (to obviate prior pleading technicalities) rather than mandatory (to require that both matrimonial and title relief be sought in the same action). That being so, there is no more reason to conclude that the common-law rule permitting separate actions has been changed than there was in Reilly v. Sicilian Asphalt *250 Paving Co. (170 N. Y. 40, 44-45), which held that common-law distinctions between causes of action for personal injury and property damage had not been changed and that a judgment for property damage did not merge a separate action for personal injury arising out of the same accident. It is, therefore, unnecessary to analyze the annulment and reformation causes of action in terms of the tests as set forth in Smith v. Kirkpatrick (305 N. Y. 66).
Plaintiff pleads the annulment action and judgment as establishing the misrepresentation. Defendant says that she failed to defend the annulment action only because she too wished the marriage terminated and should not be held collaterally estopped by the annulment judgment. Though the causes of action be different, the prior judgment11 operates as an estoppel in a subsequent action between the same parties as to all material and relevant facts which were litigated and decided and which were necessary to the determination of the issues in the prior action ” (Zizzi v. Zizzi, 33 A D 2d 926, 927, mot. for lv. to app. den. 27 N Y 2d 481, and cases cited therein), and this is true though the prior judgment be one by default (Parker v. Hoefer, 2 N Y 2d 612, 616, cert. den. 355 U. S. 833; Crouse v. McVickar, 207 N. Y. 213, 217; Rosenberg, Collateral Estoppel In New York, 44 St. John’s L. Rev. 165,173-177).
The fraud upon which the reformation action is based is the same as that for which the annulment was granted, for defendant’s name would not have appeared in the deed but for the marriage. True the marriage contract preceded the real estate contract and deed, but it was an essential of the annulment action that defendant had misrepresented her prior status and that plaintiff had not learned of the misrepresentation until after the marriage, and specific findings to that effect were made in the annulment action. In that action plaintiff testified that he did not learn of defendant’s prior marriage until a young man came to the house and was introduced as defendant’s son, but he did not identify the house to which he referred or fix the date. The annulment judgment is, therefore, conclusive as to the misrepresentation and the fact that plaintiff did not learn of its falsity until some undefined time after the marriage, but is not conclusive that at the time title to the house was taken in joint names plaintiff had no knowledge of the fraud. Since all of the testimony of defendant and her son concerning plaintiff’s knowledge of defendant’s prior marriage related to the period prior to the marriage, it must be and is stricken.
*251 On the remaining testimony the court finds that when title to the house was taken on August 5, 1968, plaintiff did not know of the prior marriage. Not only is there, after the foregoing testimony is stricken, no contradiction of plaintiff’s testimony that he first learned of the marriage while in the Great Neck house, but that testimony is consistent with the marriage license application on which defendant, without apparent reason other than concealment, represented that this was her first marriage. It follows that, defendant’s interest as a tenant by the entirety having been obtained by fraud, plaintiff is entitled to reformation of the deed (Randolph v. Randolph, 28 Misc 2d 66; see Hildebrand v. Hildebrand, 25 A D 2d 698; Silva v. Scherer, 23 A D 2d 580; Butler v. Butler, 93 Misc. 258), and it is no bar to reformation that the grantor who made the deed, but no longer has any interest in the property, is not a party to this lawsuit (Butler v. Butler, supra).
It does not follow, however, that defendant has no interest whatsoever in the property, for the evidence discloses that she made substantial contributions to the purchase of the house. That being so, and the misrepresentation, though tainting the house purchase sufficiently to warrant reformation, not having been made directly for the purpose of obtaining an interest in the property, defendant should not in good conscience be deprived of her investment in the property to plaintiff ’s enrichment. Bather in the interest of justice, the property will be impressed with an equitable lien in favor of defendant, limited in amount to the money paid by her out of her own funds at the closing and thereafter in reduction of the mortgage and in the making of improvements (Badami v. Badami, 29 A D 2d 645; Towner v. Berg, 5 A D 2d 481). The court finds that all of the $2,800 down payment came from defendant’s funds and that $1,500 of the $14,000 paid at the title closing came from defendant’s funds and that defendant is entitled to an equitable lien in the amount of $4,300.
Settle on notice judgment reforming the deed as above provided, declaring defendant entitled to an equitable lien of $4,300 and providing that unless plaintiff pays that sum to defendant within 20 days after service upon him of a copy of the judgment, the property may be sold in satisfaction of the lien.