**In re Anthony M. BENTLEY, Debtor.**

**Bankruptcy No. 81 B 10607 (PBA).**

United States Bankruptcy Court,
S.D. New York.

March 11, 1985.

Anthony M. Bentley, New York City, pro se.

Sherman, Citron & Karasik, P.C., New York City, for Debtor in Possession.

Harry Gurahian, New York City, for Bank of Commerce.

Andrew S. O'Connor, New York City, for The Chase Manhattan Bank, N.A., The Chase Manhattan Bank, N.A. Litigation Div.

MEMORANDUM DECISION AND ORDER DENYING OBJECTIONS TO CERTAIN CLAIMS AND ALLOWING CLAIMS

PRUDENCE B. ABRAM, Bankruptcy Judge:

By motion dated April 16, 1984, Anthony M. Bentley, the debtor in this confirmed

Chapter 11 case, objected to a number of claims. The motion is dealt with in this decision only to the extent that it objects to the claim of Bank of Commerce ("Commerce"), Claim No. 2 in the amount of $2,383.10, and to the claims of The Chase Manhattan Bank, N.A. ("Chase"), Claim No. 10 in the amount of $2,307.26, and Claim No. 11 in the amount of $4,234.85.[1] The objection to the Commerce claim is that it "is contrary in its entirety to evidence as reflected in debtor's books and records." The objection stated to the Chase claims is as follows: *"Counterclaim* In or about November of 1977 Chase wrongfully dishonored debtor's checks causing debtor substantial consequential damage at least equal to its combined claims."

The Commerce claim is predicated on a default judgment entered by the Civil Court of the City of New York, New York County dated June 21, 1978 in the amount of $2,045.58, to which $337.52 of interest at the rate of 6% has been added bringing the total to $2,383.10. The Commerce judgment had been outstanding for approximately two and one half (2½) years at the time Bentley filed his Chapter 11 petition on March 20, 1981. No motion had ever been made to vacate the judgment. Bentley's schedules list Commerce as an unsecured creditor for $1,958.08 with a description reading "1978, personal credit, writing, disputed, set-off, judgment."

Chase's Claim No. 11 in the amount $4,234.85 is based on a default judgment obtained in February 1979 in the Civil Court of the City of New York. This was some two years before Bentley's petition was filed. No motion to open this judgment has ever been made to the Civil Court. The other claim by Chase, Claim No. 10 for $2,307.26, is not based on a judgment and is for unpaid charges incurred on a Visa card on or before June 7, 1978. Chase is listed on the debtor's schedules as an unsecured creditor for $4,656.65, with the description "1978, personal credit, writing, disputed, set-off, judgment." On Schedule B–2 of Personal Property there is listed under q, which calls for a listing of contingent and unliquidated claims of every nature, including counterclaims of the bankrupt or debtor, and the estimated value of each, the following "v. Chase, Chemical Bank, breach of contract $1,500,000.00."

As is outlined in the court's other opinions in this case being issued concurrently with this opinion, Bentley's confirmed plan provides for payment on consummation of 100% of unsecured claims, without interest. 47 B.R. 266. The plan has been funded with the proceeds of the sale of Bentley's cooperative apartment at 75 East End Avenue, New York City.

At the June 20, 1984 hearing on the objections to the Chase and Commerce claims, the court declined to permit Bentley to offer sworn testimony or documentary evidence as to his counterclaims and offsets. The court directed the parties to submit briefs on the issue of whether the counterclaims and offsets were barred as a matter of law because two of the three claims were based on judgments entered more than one year before the commencement of the Chapter 11 case.[2] During the

---

1. The debtor also objected to Claim No. 13 in the amount of $2,307.26 filed by Chase. However, that part of the objection is moot as Chase has consented to having Claim No. 13 expunged as a duplicate claim.

2. Bentley has urged that by reason of the confirmation of his Chapter 11 plan the Chase and Commerce judgments have been voided and he cites to Code § 524(a)(1). Code § 524(a)(1) does void any judgment to the extent that the judgment is a determination of the personal liability of the debtor for a discharged debt. However, this post-discharge voiding does not have any effect on the allowability of a claim, which allowability is predicated on the basis of matters as they stood at the time the petition was filed. It has always been the law that a debt based on a judgment may be proved on the judgment. See Former Bankruptcy Act § 63a(5) ("Debts * * * may be proved * * * which are founded upon * * * (5) provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge * * *") and compare to Code § 101(4) ("'claim' means —(A) right to payment, whether or not such right is reduced to judgment * * * * *"). The fortuity of the timing of the hearing on the

hearing Bentley stated that as to the Commerce claim, his claimed offset was predicated on the very check charged back to his account on which the judgment was obtained. With respect to the counterclaim asserted against Chase, Bentley explained that it was based on a claim that, during the period November and December 1977 and January 1978, Chase, without his knowledge, dishonored checks while there was a balance in the account and failed to explain to him why the checks were bouncing. He admitted that these events occurred prior to the time Chase obtained its judgment.

The starting point of any analysis with respect to the Commerce and Chase claims must be the question of what finality is to be accorded the judgments. Under New York law, a default judgment may be vacated by a person served, other than by personal delivery, within one year after he obtains knowledge of entry of the judgment, but in no event more than five years after entry. A showing of a meritorious defense must be made. See New York Civil Practice Law and Rules § 317. In all other situations, NYCPLR § 5015(a)(1) governs and provides that the court may on motion relieve a party from a judgment upon the ground of excusable default, if the motion is made within one year after service of a copy of the judgment with written notice of its entry. NYCPLR § 5015(a)(3) also permits relief from a judgment based on fraud, misrepresentation, or other misconduct of an adverse party, and NYCPLR § 5015(a)(4) permits relief based on lack of jurisdiction to render the judgment or order. As to these grounds no time limit is specified. Compare Federal

Rules of Civil Procedure 60(b) (Motion to be relieved of judgment shall be made within a reasonable time and not more than one year after the judgment was entered when based on (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which could not have been discovered in time to move for a new trial; or (3) fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party) and Bankruptcy Rule 9024 (Fed.R.Civ.Proc. 60 applies in bankruptcy cases except that the one-year time limit is not applicable to certain specified situations.)

The Practice Commentary to CPLR § 5015, provides:

"Most courts today hold that while a defendant must show—whichever of CPLR 317 and 5015(a)(1) he relies on for his motion to vacate a default judgment—that he has something to defend with (the well known 'affidavit of merits' requirement), he need add the second element—an excuse for the default—only when he uses 5015(a)(1). Under CPLR 317, he doesn't need an excuse. The construction of CPLR 317 has been that all the defendant has to show under that statute is that he didn't 'personally receive notice of the summons in time to defend.'" Supp.Prac.Comm. McKinney's CPLR § 5015 at 432, Vol. 7B (1984).

 New York accords the same *res judicata* effect to a default judgment as to a judgment after a disputed trial. *Goldfarb v. Cranin*, 35 Misc.2d 126, 229 N.Y. S.2d 43 (1962); *Gilbert v. Gilbert*, 113 N.Y. S.2d 383 (1952); *Roberts v. Strauss*, 108

---

objection as occurring before or after a discharge order issues does not affect the outcome of the objection.

The court also rejects Bentley's argument that the filing of proofs of claim should be equated to the commencement of a lawsuit so as to permit him to invoke the benefit of the New York procedural rule that a barred counterclaim may still be used defensively. See N.Y. CPLR § 203(c) (McKinney's 1972) (" * * * if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which as claim asserted in

the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.") There is no reason to permit a Chapter 11 filing, which initiates an *in rem* proceeding and which requires creditors to file a proof of claim to share in the estate of the debtor when it has not admitted the claim on its schedules, to have this effect. Further, Chase and Commerce have based their claims on the judgments, not on the underlying claims to which Bentley's counterclaims and offsets relate.

N.Y.S.2d 733 (1951); *L & W Air Conditioning Co. Inc. v. Varsity Inn. of Rochester, In.*, 82 Misc.2d 937, 371 N.Y.S.2d 997 (1975); *64 West Park Ave. Corp. v. Parlong Realty*, 77 Misc.2d 1019, 354 N.Y.S.2d 342 (1974); *Hambly v. Aetna Cas. & Sur. Co.*, 51 A.D.2d 567, 378 N.Y.S.2d 632 (1976); *Trecot v. Taxter*, 69 Misc.2d 248, 329 N.Y.S.2d 139 (1972). The default judgment bars relitigation between the parties of any fact which necessarily underlies the judgment, and any underlying fact can be ascertained by reference to the judgment itself, the pleadings, the affidavits, or any other item in the record of the case. See Practice Commentary C3215.26 to CPLR § 3215 at page 881, Vol. 7B of McKinney's Civil Practice Law and Rules (§§ 3201–3400).

New York has no compulsory counterclaim rule. *Brown v. Gallaudet*, 80 N.Y. 413 (1880); *Herbert v. M & P Scrap Iron & Metal Corp.*, 41 Misc.2d 1020, 247 N.Y.S.2d 193 (1964); *Dunham v. Bower*, 77 N.Y. 76 (1879); *N.Y. Univ. v. Molner*, 119 Misc.2d 989, 464 N.Y.S.2d 984 (1983). *See also* Weinstein, Korn & Miller, ¶ 3019.12, pp. 33–447 (1975). Notwithstanding the absence of a compulsory counterclaim rule in New York, the traditional legal doctrines of *res judicata* and collateral estoppel accomplish much the same result in many instances. See also Practice Commentary C3019.2 to CPLR § 3019 at 216, Vol. 7B of McKinney's Civil Practice Law and Rules (§§ 3014–3100) ("Whenever defendant's claim does have a relationship to the plaintiff's, however, the defendant had better consider carefully the potential effect of the doctrine of collateral estoppel, which can have the same impact as a compulsory counterclaim rule. It may still happen, therefore, that the defendant's failure to have interposed his claim as a counterclaim will result in his forfeiture not merely because he withheld it, but because a fact adjudicated in the trial of the plaintiff's claim disposes of defendant's claim as well.") See also Weinstein, Korn & Miller *supra*, at 30–447–30–448.

■ It is clear that on the foregoing analysis that Bentley's offset to the Commerce claim is barred by the application of *res judicata*. Furthermore, the judgment is not subject to being reopened, the time to do so having passed before the Chapter 11 petition was filed. Bentley has argued that when there is a strong federal policy to be protected a federal court will not afford *res judicata* effect to a state court judgment. Unfortunately, there is no such strong federal policy here. The federal rules relating to reopening default judgments are as restrictive, if not more so than New York's. There is no policy derivable from the Bankruptcy Code itself that favors permitting relitigation of barred claims as a general matter. The United States Supreme Court has considered the application of the doctrine of *res judicata* in bankruptcy cases and reaffirmed its general applicability. See *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979); *Heiser v. Woodruff*, 327 U.S. 726, 738 n. *, 66 S.Ct. 853, 858 n. *, 90 L.Ed. 970 (1946); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). See also *In re Mastercraft Record Plating, Inc.*, 39 B.R. 654 (D.C.S.D.N.Y. 1984). The property of the estate is limited to the debtor's interest in real or personal property as it exists on the date of the filing of the petition. Bankruptcy Code § 541. On the date of the filing of the petition Bentley had no non-barred claim against Commerce to assert as an offset. Commerce's claim must therefore be allowed.

The analysis as to Chase cannot be completed as the record does not include any information as to the complaint on which the Chase judgment is based. Without that information, the court is unable to assess whether Bentley's counterclaim is barred by *res judicata*. Of course, even if Bentley's claims are not barred by *res judicata* they may have become barred by the expiration of the statute of limitations. Depending on how the claims are characterized, Bentley's counterclaims could be governed either by the three-year statute of limitations (CPLR § 214(4)) (an action to

recover damages for an injury to property) or the six-year statute of limitations (CPLR § 213(1) or (2)) (an action for which no limitation is specifically prescribed by law or an action upon a contractual obligation or liability express or implied). Thus, if a three-year statute applied Bentley's claims would have been barred when his Chapter 11 petition was filed.

Claim No. 2, of Bank of Commerce, is allowed in the amount of $2,383.10. Bentley is directed to promptly make payment of this claim as required under his confirmed plan.

Chase is directed within 30 days hereof to make a further submission in a form sufficient to enable the court to determine the *res judicata* effect of its judgment on Bentley's counterclaims. Bentley is directed to submit any response within fifteen days thereafter.

It is so ordered.